**Elizabeth MILLARES GUIRALDES DE TINEO and Boris Baptista Millares, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**Docket No. 97–6169.**

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1998.

Decided Feb. 26, 1998.

---

Harry H. Wise, III, New York City, for Plaintiffs–Appellants.

Martin J. Siegel, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Steven M. Haber, Assistant United States Attorney, New York City, on the brief), for Defendant–Appellee.

Before: KEARSE and WALKER, Circuit Judges, and WEINSTEIN, District Judge*.

KEARSE, Circuit Judge:

Plaintiffs Elizabeth Millares Guiraldes de Tineo ("Millares") and her son Boris Baptista Millares ("Baptista") appeal from a judgment of the United States District Court for the Southern District of New York, Sidney H. Stein, *Judge,* dismissing their complaint against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671–2680 (1994) ("FTCA" or the "Act"), for damages for false imprisonment in Chile as a result of allegedly false representations and negligent conduct of agents of the United States Drug Enforcement Administration ("DEA"). The district court granted summary judgment dismissing the complaint principally on the ground that there had been no actionable conduct by the DEA within the United States. On appeal, plaintiffs contend, *inter alia,* that the district court failed to draw all permissible factual inferences in their favor. We affirm on the ground that the district court lacked subject matter jurisdiction because plaintiffs failed to file timely administrative claims as required by the FTCA.

## I. BACKGROUND

Except to the extent indicated below, the following facts are not in dispute.

### A. *The Events*

In the spring and summer of 1990, Millares performed services as a confidential informant for the DEA's office in La Paz, Bolivia. On or about August 24, 1990, Millares traveled to Iquique, Chile, at the request of that office in connection with its investigation of a suspected drug trafficker. She was accompanied by Baptista, and she was carrying approximately one kilogram of cocaine. Millares asserts that she took the cocaine to Chile because she was instructed to do so by DEA agents; the United States asserts that, although the DEA asked Millares to go to Chile, it was she who proposed

taking the narcotics, and the DEA agents with whom she was dealing instructed her not to do so.

On or about August 28, 1990, Millares was arrested in Iquique by the Chilean police; she was thereafter convicted of drug trafficking and was imprisoned. Baptista, also arrested, was not convicted of any crime and was released in October 1990. Millares was released in February 1991.

Following her release from jail in Chile, Millares returned to Bolivia. In the spring of 1991, she met with DEA agents in La Paz, seeking reimbursement for the expenses she had incurred in her mission and trial in Chile. In one such meeting, Millares presented the DEA with a document dated May 20, 1991, entitled (in translation) "MEMORY AID AND PROPOSITION" (the "Memory Aid"), describing in detail Millares's work for the DEA and her trip to Chile. The Memory Aid concluded as follows:

In view of the foregoing and stressing my position I'm asking that in a friendly manner the expenses incurred by me be recognized in my defense, and the abandonment to which I was subjected by the DEA, and I am asking you to get in touch with my attorney, Mr. Juan Carlos Lazcano Henry, who has precise instructions to utilize the most advisable means to obtain the indemnity, to which I am entitled by law, be it in the U.S.A. or in Bolivia.

At her deposition in this action, Millares testified that after receiving the Memory Aid, the DEA asked her what she wanted, and she responded as follows:

A. I said that at least they should reimburse me the money that I had spent on the court case and that I had never received any salary. They never paid me, they never gave me money.

Q. Did you name an amount of money that you wanted the DEA to pay you?

A. I gave them an amount, and it was $38,000.

Q. How did you arrive at the amount $38,000?

---

* Honorable Jack B. Weinstein, of the United States District Court for the Eastern District of     New York, sitting by designation.

A. That was the money ... the expenses, that was spent on the court case alone.

The DEA eventually paid Millares $10,000 in September 1991.

On or about September 20, 1993, plaintiffs presented to the DEA claims on government Standard Form 95 (the "standard form claims"), requesting damages for unjust arrest and imprisonment in the amounts of $1,500,000 for Millares and $1,000,000 for Baptista. The DEA denied the claims in February 1994.

### B. The Present Action

Plaintiffs commenced the present action in March 1994, charging the DEA with fraud and negligence. The complaint alleged that the DEA had instructed Millares to go to Chile undercover with Baptista; that the DEA had instructed her to take the cocaine to Chile; that after she arrived in Chile, the agency was unable to provide her with a correct telephone number for the suspected drug buyer who was a target of the undercover operation; that Millares then went to Chilean law enforcement authorities in an attempt to complete her mission; that the Chilean authorities doubted her story and called the La Paz office of the DEA to attempt to confirm it; and that the DEA responded falsely to that inquiry by denying any role in Millares's trip to Chile. The complaint alleged that at no time did the DEA step in to help plaintiffs defend against the Chilean charges of drug trafficking, with the result that Millares was convicted and sent to prison. For plaintiffs' arrest, imprisonment, and "emotional trauma," the complaint sought damages of $1,500,000 for Millares and $1,000,000 for Baptista.

The United States moved to dismiss the complaint on several grounds. First, it contended that plaintiffs' standard-form claims, filed in September 1993, were not presented to the DEA within the two-year period following the accrual of the claims, as required by the FTCA, and hence the district court lacked subject matter jurisdiction of the action. Alternatively, the United States contended that it was entitled to summary judgment because the FTCA does not authorize

suit based on claims arising in foreign countries. In support of the latter contention, the government submitted affidavits from two DEA agents who had dealt with Millares in Bolivia, stating that they had not discussed with anyone in the United States either Millares's work for the DEA's La Paz office or the drug investigation in connection with which she went to Chile; the government submitted a similar affidavit from a third agent denying that he had had any such conversations except for a casual conversation during a chance encounter at DEA headquarters in the United States with a colleague who was stationed in Chile. In addition, the United States argued that plaintiffs' claims of intentional misrepresentation and of DEA failure to intercede with the Chilean authorities on their behalf were outside the scope of the FTCA.

In opposition to the motion to dismiss for lack of subject matter jurisdiction, plaintiffs argued that their submission of the Memory Aid to DEA agents in May 1991 constituted the presentation of their claims within the two-year period prescribed by the FTCA. In arguing that the FTCA's exclusion of claims arising in a foreign country was inapplicable here, plaintiffs contended principally that the DEA agents in question had been inadequately trained in the United States; that Millares's mission to Chile was planned and negligently supervised in the United States; and that personnel at DEA headquarters in the United States negligently failed to help her after she was arrested, despite knowledge of her arrest.

In an order dated July 9, 1997 ("Order"), the district court granted the United States's motion for summary judgment. The court ruled that the claims of intentional misrepresentation should be dismissed because the FTCA does not authorize either claims for intentional torts or claims arising in a foreign country. It ruled that the foreign-country exclusion also barred plaintiffs' claims for negligent planning and supervision of the Chilean trip, concluding that there was insufficient evidence that plaintiff's injuries were proximately caused by any acts of DEA agents in the United States. The court ruled that the claim that the United States had

failed to assist Millares after she was arrested was not cognizable under the FTCA because the Act "restricts tort suits against the government to 'circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred,'" Order at 4 (quoting 28 U.S.C. § 1346(b)), and "[p]laintiffs have not identified any tort based upon a private person's failure to help someone avoid criminal prosecution," *id.* at 5. The court found it unnecessary to reach the United States's other contentions.

Judgment was entered dismissing the complaint, and this appeal followed.

## II. DISCUSSION

On appeal, plaintiffs contend that in dismissing their claims under the FTCA's foreign-country exclusion, the district court impermissibly resolved disputed issues of fact by drawing inferences against them. They also argue that their claims were timely presented to the DEA in 1991.

■ This Court is "free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." *Leecan v. Lopes,* 893 F.2d 1434, 1439 (2d Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990). *See also Langnes v. Green,* 282 U.S. 531, 535–39, 51 S.Ct. 243, 244–46, 75 L.Ed. 520 (1931) (appellee may, without filing a cross-appeal, advance any theory in support of the judgment that is supported by the record, whether it was ignored by the court below or flatly rejected); *Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 63 (2d Cir.1997). In this case, we affirm on the ground that the district court lacked jurisdiction to entertain the action because plaintiffs failed to make written presentation of their present claims to the DEA within the time provided by the FTCA.

■ It is well established that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued," and hence may be sued only to the extent that it has waived sovereign immunity by enacting a statute consenting to suit. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). "[T]he terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* Any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 318–21, 106 S.Ct. 2957, 2963–65, 92 L.Ed.2d 250 (1986); *Bowen v. City of New York,* 476 U.S. 467, 479, 106 S.Ct. 2022, 2029–30, 90 L.Ed.2d 462 (1986); *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *cf. Schweiker v. Hansen,* 450 U.S. 785, 788, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981) (per curiam) (refusing, despite official's erroneous statements to claimant, to estop government from denying benefits in view of courts' duty "to observe the conditions defined by Congress for charging the public treasury" (internal quotation marks omitted)); *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947) (same).

■ The FTCA, 28 U.S.C. §§ 1346(b), 2401(b), and 2671–2680, constitutes a limited waiver by the United States of its sovereign immunity, *see, e.g., Dalehite v. United States,* 346 U.S. 15, 30–36, 73 S.Ct. 956, 965–68, 97 L.Ed. 1427 (1953). The Act's limitations foreclose suit unless the tort claimant has previously presented to the appropriate administrative agency a claim that meets the specific statutory requirements as to its form, content, and timing. Thus, the FTCA provides, *inter alia,* that

> [a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *unless the claimant shall have first presented the claim to the appropriate Federal agency ....*

28 U.S.C. § 2675(a) (emphasis added). *See, e.g., Wyler v. United States,* 725 F.2d 156,

159 (2d Cir.1983) (district court lacks subject matter jurisdiction to entertain claim not previously presented to appropriate federal agency). The Act provides that an "[a]ction under [§ 2675] shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b); *see, e.g., Adams v. United States Dep't of Housing and Urban Development,* 807 F.2d 318, 321 (2d Cir.1986) (administrative claim for damages "in excess of" $1,000 sufficed to permit suit only for $1,000 since no other sum was specified); *Keene Corp. v. United States,* 700 F.2d 836, 841 (2d Cir.) (requirement that administrative claim state a specific dollar sum is jurisdictional), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Finally, the Act provides that

> [a] tort claim against the United States shall be forever barred unless it is presented *in writing* to the appropriate Federal agency *within two years after such claim accrues* . . . .

28 U.S.C. § 2401(b) (emphases added); *see, e.g., Leonhard v. United States,* 633 F.2d 599, 624 (2d Cir.1980) (no jurisdiction where claims were presented to agency more than two years after accrual), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Bialowas v. United States,* 443 F.2d 1047, 1048–50 (3d Cir.1971) (no jurisdiction where amount of claim was specified only orally). We construe the amount-of-claim and in-writing requirements specified in § 2675(b) and § 2401(b), respectively, to mean that "the amount of the claim presented to the federal agency" must be "presented in writing."

■ In sum, the United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing.

■ In the present case, these requirements were not met. The claims alleged in the complaint accrued no later than the dates on which plaintiffs were released from their respective incarcerations in Chile. Baptista was released in October 1990; Millares was released in February 1991. The standard-form claims plaintiffs presented to the DEA were not filed until September 1993, *i.e.,* more than two years after the claims' accrual. Hence the standard-form claims did not meet the time limitation imposed by the FTCA.

■ Nor, for several reasons, are we persuaded by plaintiffs' argument that the statutory time limitation was satisfied by their submission to the DEA of the Memory Aid in the spring of 1991. First, the claims asserted in the present suit were not mentioned in the Memory Aid. That document did not mention Baptista at all; hence it did not purport to present any claim on his behalf. As to Millares, the Memory Aid requested only reimbursement for "the expenses incurred." There was no mention of any request for compensation for false imprisonment or emotional suffering.

■ Moreover, the Memory Aid failed to meet the FTCA's requirements because it did not mention any specific sum of money. Millares argues that this deficiency was cured in the ensuing discussions in which she informed the DEA orally that she wanted "$38,000." We find several flaws in this argument as well. First, the reference to the sum of $38,000, even if it were sufficient to meet other statutory requirements, is insufficient to permit a suit for $1,500,000, or indeed for any amount above $38,000. Second, Millares's deposition testimony reveals that her oral specification of $38,000 stated that she wanted that sum only for "expenses"; it did not refer to damages for false imprisonment or emotional distress. Hence the oral statement specified a different injury than that for which compensation is sought here. Third, and most fundamentally, the oral specification did not satisfy § 2401(b)'s express requirement that the claim be "presented in writing."

■ Plaintiffs contend that even if we conclude that there was no proper presentation of an administrative claim until the standard-form claims were submitted in September 1993, the two-year filing period should be deemed equitably tolled, either on the ground that Millares made a good-faith effort

in 1991 to assert plaintiffs' present claims, or on the ground that the DEA agents, in dealing with her request for reimbursement in the spring of 1991, engaged in reprehensible conduct. We have reviewed the record, and we see no evidence of facts that could support equitable tolling.

## CONCLUSION

We have considered all of plaintiffs' arguments in support of subject matter jurisdiction and have found them to be without merit. The judgment dismissing the complaint is affirmed.