175 F.3d 132
 PRESIDENTIAL GARDENS ASSOCIATES, Graham Village Associates
Limited Partnership, Park West Associates Limited
Partnership, First Hartford Realty Corporation, Briar Knoll
Associates Limited Partnership, Sovereign Group 1984-2
Limited Partnership, Highridge Associates Limited
Partnership, Neil Ellis, as sole general partner o/b/o Park
West Associates Limited Partnership, Parker Street
Corporation, Plaintiffs-Appellants,
v.
UNITED STATES of America, on Behalf of the SECRETARY OF
HOUSING AND URBAN DEVELOPMENT, Defendant-Appellee.
 No. 97-6201.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 8, 1998.
Decided April 16, 1999.
 
 Lee H. Kozol, Boston, MA (Victor Bass, Friedman & Atherton, Boston, MA, of counsel), for Plaintiffs-Appellants.
 Jeannine R. Lesperance, Trial Attorney, Department of Justice, Washington, DC (Frank W. Hunger, Assistant Attorney General, J. Christopher Kohn, Director, Robert M. Hollis, Assistant Director, Civil Division, Department of Justice, Washington, DC, on the brief; John H. Durham, Deputy United States Attorney for the District of Connecticut, Sharon E. Jaffe, Assistant United States Attorney, New Haven, CT, of counsel; Geoffrey Patton, Affirmative Litigation, Department of Housing & Urban Development, Washington, DC, of counsel) for Defendant-Appellee.
 Before: PARKER and SACK, Circuit Judges, and SEAR, District Judge.*
 PARKER, Circuit Judge.
 
 
 1
 Plaintiffs-Appellants, a group of limited partnerships operating in both Connecticut and Massachusetts, appeal from a judgment entered July 24, 1997, in the United States District Court for the District of Connecticut (Alfred V. Covello, Judge), dismissing Plaintiffs' claims against Defendant-Appellee United States.
 
 
 2
 This case was originally brought by Plaintiffs-Appellants Presidential Gardens Associates, Graham Village Associates Limited Partnership, Park West Associates, and First Hartford Realty Corporation ("FHRC"), who collectively filed a complaint against the United States in the U.S. District Court for the District of Massachusetts on March 15, 1996. Their complaint demanded declaratory relief, damages in breach of contract, and equitable relief based on the United States' alleged breach of a settlement agreement. The complaint was later amended to include Plaintiffs-Appellants Briar Knoll Associates Limited Partnership, Highridge Associates Limited Partnership, Sovereign Group 1984-2 Limited Partnership, Neil H. Ellis, and Parker Street Corporation. The case was transferred from Massachusetts to the U.S. District Court for the District of Connecticut, which then dismissed Plaintiffs-Appellants' claims for lack of subject-matter jurisdiction.
 
 I. BACKGROUND
 
 3
 Each of the Plaintiffs-Appellants had at one time owned multi-family housing projects, which they had purchased or built with the proceeds of loans that were insured against nonpayment by the U.S. Department of Housing and Urban Development ("HUD"). Presidential Gardens Associates, Graham Village Associates Limited Partnership, and Park West Associates were insured by HUD under section 221(d)(3) of the National Housing Act, 12 U.S.C. § 1715l (d)(3); they are therefore referred to collectively as the "D3 Plaintiffs." Briar Knoll Associates Limited Partnership, Highridge Associates Limited Partnership, and Sovereign Group 1984-2 Limited Partnership were insured under section 221(d)(4) of the Act, 12 U.S.C. § 1715l (d)(4), and are therefore referred to collectively as the "D4 Plaintiffs." Other parties involved with these arrangements included FHRC, Neil H. Ellis, Stuart Greenwald, Leonard E. Seader, all of whom were either general partners in or officers of the D3 and D4 Plaintiffs. Both the D3 and D4 Plaintiffs were obligated under their loan agreements with HUD to operate their projects within various terms and conditions, some of which imposed limitations on the use of project assets.
 
 
 4
 Between 1992 and 1993, each of the D3 and D4 Plaintiffs initiated Chapter 11 bankruptcy proceedings in the Bankruptcy Court in the District of Massachusetts (the "Bankruptcy Court") and became Debtors-in-Possession; in each of these proceedings, HUD asserted claims as a general creditor. HUD believed that several general partners of the Plaintiffs-Appellants, most notably FHRC, had diverted funds from the D3 and D4 Plaintiffs. In 1992, HUD therefore initiated administrative proceedings to suspend FHRC, Ellis, Greenwald, and Seader from participation in future HUD programs.
 
 
 5
 When a party whose mortgage is insured under Title II of the National Housing Act (section 1707 et. seq.) uses project assets or income in an unauthorized manner, an action may be brought by the Government to recover assets or income from that party. 12 U.S.C. § 1715z-4a. The Secretary of HUD does not bring such actions in her own capacity. Rather, she requests the U.S. Attorney General to bring the action in a United States district court. 12 U.S.C. § 1715z-4a(a)(1). The Attorney General, suing on behalf of the Secretary, may seek and recover "double the value of the assets and income of the project that the court determines to have been used in violation of the regulatory agreement...." 12 U.S.C. § 1715z-4a(c). It is the U.S. Attorney General, and not the Secretary of HUD, who has the "exclusive authority to authorize the initiation of proceedings under this section." 12 U.S.C. § 1715z-4a(b).
 
 
 6
 Pursuant to these statutory provisions, the United States brought a civil action on behalf of the Secretary of HUD in the U.S. District Court for the District of Connecticut (the "Connecticut District Court") in 1992, in order to recover a claimed $3.7 million in double damages based on FHRC's alleged diversion of funds. In this action, United States v. First Hartford Realty Corp., et. al, Civil Action No. 92CV895 (AVC) ("the Connecticut Action"), defendants included most of the D3 and D4 Plaintiffs, along with FHRC, Ellis, Greenwald, Seader, MIPI-6-A Corporation, and several other Connecticut-based partnerships. The United States of America was the only named plaintiff in the Connecticut Action, although the complaint specified that the United States was suing on behalf of the Secretary.
 
 
 7
 On February 22, 1994, the United States and the defendants in the Connecticut Action entered into a settlement agreement (the "Settlement Agreement"), wherein "United States on behalf of HUD" was listed as one of the parties. The Settlement Agreement provided for the dismissal without prejudice of both the Connecticut Action and the administrative suspension proceedings. FHRC agreed to sell the D3 Plaintiffs' housing projects and use the proceeds to repay its diversions with interest. In addition, the D3 Plaintiffs agreed to pay $500,000, a portion of which would be deposited into a trust account for the benefit of HUD (the "Trust Account") as each D3 project was sold. When the last of the five D3 projects was sold, the $500,000 (the proceeds in the Trust Account) was to be wired directly to the United States, which would then pay the money to HUD.
 
 
 8
 The Settlement Agreement also provided that HUD would facilitate the sale of the D3 Plaintiffs' housing projects by processing all the D3 Plaintiffs' notices and applications "on a first priority basis, as expeditiously as possible, without regard to any alleged past violation of any Regulatory Agreement by any party to this Agreement." With regard to the D4 Plaintiffs' housing projects, the parties agreed simply to negotiate workout agreements "in good faith for no longer than two years."
 
 
 9
 The Settlement Agreement contained a jurisdictional provision that provided as follows:
 
 
 10
 The pending Chapter 11 proceedings of the Debtor Entities shall be resolved by Chapter 11 Plans not inconsistent with this Agreement. The parties understand that the Bankruptcy Court will retain jurisdiction to enforce the terms of this Agreement, as incorporated into said Plans....The parties also understand that the [Connecticut District Court] will retain jurisdiction to enforce the terms of this Agreement as to FHRC, Ellis, Greenwald, Seader and MIPI6-A Corp....
 
 
 11
 This Settlement Agreement was approved by order of the Connecticut District Court on March 2, 1994, and by the Bankruptcy Court on March 14, 1994. The Agreement was then incorporated into each of the Plans of Reorganization of the D3 Plaintiffs (the "D3 Plans"). The D3 Plans were approved by the Bankruptcy Court on August 11, 1994. The reorganization plans of the D4 Plaintiffs were never confirmed, and their bankruptcy cases were eventually dismissed on motion in 1997.
 
 
 12
 The D3 Plaintiffs' properties were sold between September 1995 and March 1996, and the $500,000 was paid into trust. However, according to Plaintiffs-Appellants, HUD failed to fulfill its own obligations under the Settlement Agreement. On March 11, 1996, HUD issued its wiring instructions to the trustee for the Trust Account. Later that same day, the D3 Plaintiffs moved to reopen the proceedings before the Bankruptcy Court so that they could file a complaint against HUD. The D3 Plaintiffs included with their motion a complaint that they had incurred $500,000 in damages because HUD had not afforded them "first priority" in processing the sales of their properties as required by the Settlement Agreement. The D3 Plaintiffs concurrently filed a motion to allow them to turn over the funds in the Trust Account to the Bankruptcy Court pending resolution of their claim.
 
 
 13
 On March 15, 1996, after briefing by the parties and oral argument, the Bankruptcy Court denied the motion to reopen, holding that there was "no cause to reopen the case under Section 350" because the court saw the dispute as "one between the equity holders and HUD and not the reorganized debtors and HUD." That same day, the D3 Plaintiffs and FHRC filed a complaint with the U.S. District Court for the District of Massachusetts (the "Massachusetts District Court") against the United States, which contained roughly the same allegations as their complaint in the Bankruptcy Court, requesting that the funds in trust be turned over to the court pursuant to Fed.R.Civ.P. 67. Nonetheless, on March 18, 1996, the D3 Plaintiffs' counsel wired the Trust Account funds to HUD, and HUD deposited these funds into the general Treasury.
 
 
 14
 In the action pending in the Massachusetts District Court, HUD moved for dismissal or, in the alternative, a transfer of venue to the District of Connecticut. HUD argued that it had been the Connecticut District Court that had approved the Settlement Agreement, and that the Connecticut District Court had retained jurisdiction to enforce the agreement. On July 29, 1996, the Massachusetts District Court denied the motion to dismiss but granted the motion for a transfer of venue, noting in its Memorandum that
 
 
 15
 [t]he retention of jurisdiction clause points to Connecticut as the appropriate forum for several reasons....In signing the Settlement Agreement, the parties consented to the jurisdiction of the Connecticut Court. Moreover, while jurisdiction is proper in this Court, the Connecticut Court has been involved with this dispute from the beginning and is in a better position to adjudicate this claim.
 
 
 16
 On August 22, 1996, after the transfer to the Connecticut District Court, the D3 Plaintiffs and FHRC filed an Amended Complaint that added the D4 Plaintiffs, Neil Ellis, and Parker Street Corporation as plaintiffs. The Amended Complaint alleged further breaches of the Settlement Agreement on the part of HUD with regard to the D4 Plaintiffs. Specifically, it alleged that HUD, without regard to its obligation to negotiate a workout agreement in good faith, had sold the D4 Plaintiffs' notes and mortgages at auction. The Plaintiffs-Appellants sought declaratory relief, a permanent injunction against a closing of the auction sale of their loans, or rescission of the sale if it closed while this action was pending, and damages in amounts to be determined by the Court. In addition, the D4 Plaintiffs added as an additional defendant the unnamed party that had purchased the D4 Plaintiffs' notes at the auction. This defendant was later revealed to be Berkeley Federal Savings Bank, now known as Ocwen Federal Savings Bank ("Ocwen").
 
 
 17
 Both Ocwen and the United States responded by filing dispositive motions. The United States asserted in its motion that: (1) the Connecticut District Court lacked jurisdiction to hear this claim because the Plaintiffs had not specified an appropriate waiver of sovereign immunity by the United States; and (2) the claims for equitable relief were moot because the funds at issue had already been transferred to the U.S. Treasury, and because the auction sales had already been conducted.
 
 
 18
 The Connecticut District Court granted these motions in a Memorandum of Decision dated July 1, 1997. The court held that the Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491, which waives the sovereign immunity of the United States in contract disputes, vests jurisdiction to hear such disputes exclusively in the Court of Federal Claims. The court agreed with Plaintiffs-Appellants that the Tucker Act did not apply to the claims for equitable relief. However, the court agreed with the Government that the equitable claims were moot, since HUD had already conducted the auction sales and funds had already been deposited into the general Treasury.
 
 
 19
 Plaintiffs-Appellants moved for reconsideration, but on July 24, 1997 the Connecticut District Court entered judgment in favor of the United States and Ocwen without addressing this motion. The court then denied Plaintiffs-Appellants' motion for reconsideration on January 12, 1998. Plaintiffs-Appellants timely appealed the dismissal as against both the United States and Ocwen. However, that portion of the appeal that related to Ocwen was subsequently settled and dismissed; therefore, the subject of the instant appeal concerns only the claims against the United States.
 
 
 20
 On appeal, Plaintiffs-Appellants argue that the Connecticut District Court erred, because subject-matter jurisdiction could properly have been premised on either the retained jurisdiction clause in the Settlement Agreement or bankruptcy jurisdiction. They also argue that, in any event, the court had jurisdiction to hear their claims for equitable relief.
 
 
 21
 The United States responds that (1) the Connecticut District Court did not retain ancillary jurisdiction over all disputes relating to the Settlement Agreement; (2) there is no waiver of sovereign immunity, under either the Tucker Act or the National Housing Act (12 U.S.C. §§ 1701 et. seq., otherwise known as the HUD enabling statute); (3) no federal district court retained ancillary jurisdiction over this matter; (4) there is no waiver of sovereign immunity under the Bankruptcy Code that would enable the Bankruptcy Court to take jurisdiction; and (5) Plaintiffs-Appellants' claims for equitable relief are moot.
 
 II. DISCUSSION
 
 22
 In any suit in which the United States is a defendant, there must be a cause of action, subject matter jurisdiction, and a waiver of sovereign immunity. The waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction, United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983), but the issues of subject-matter jurisdiction and sovereign immunity are nonetheless "wholly distinct," Blatchford v. Native Village of Noatak, 501 U.S. 775, 786-7 n. 4, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). A showing of jurisdiction is not alone sufficient to allow the instant suit to proceed-there must also be a showing of specific waiver of sovereign immunity. Plaintiffs-Appellants assert that either or both of the district courts (Massachusetts or Connecticut) retained ancillary jurisdiction to enforce the Settlement Agreement, but that assertion does not bear on the issue of whether there was a waiver of sovereign immunity.
 
 
 23
 Plaintiffs-Appellants also assert that the jurisdictional provision in the Settlement Agreement constitutes a waiver of sovereign immunity. The sovereign immunity of the United States may only be waived by federal statute, Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 719 (2d Cir.1998), and there are only four possible statutory bases for a waiver of sovereign immunity in this case: (1) the National Housing Act, which authorizes the Secretary of HUD to sue and be sued under certain circumstances; (2) the Tucker Act, which applies to contract claims against the United States; (3) the Bankruptcy Code, at 11 U.S.C. § 106, which generally waives sovereign immunity with regard to bankruptcy proceedings; and (4) the Administrative Procedure Act, 5 U.S.C. § 702, which governs equitable claims against the government. For reasons discussed below, none of these statutory provisions waives sovereign immunity such that the instant suit can be brought in the Connecticut District Court. The district court therefore lacks subject-matter jurisdiction and its decision to dismiss Plaintiffs-Appellants' claims is affirmed.
 
 A. Ancillary Jurisdiction
 
 24
 Plaintiffs-Appellants first contend that either the Massachusetts District Court or the Connecticut District Court, or both courts, retained ancillary jurisdiction to adjudicate their claims. The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The Kokkonen Court did suggest that ancillary jurisdiction might exist over actions to enforce a settlement agreement with a retention of jurisdiction clause. Id. at 381, 114 S.Ct. 1673.
 
 
 25
 Whether ancillary jurisdiction exists, however, has no impact whatsoever on the issue of sovereign immunity or its waiver. For example, ancillary jurisdiction is almost always present with regard to cross-claims and counterclaims. 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3523, at 102 (2d ed.1984). But sovereign immunity still bars such claims from being brought against the government absent a waiver, except with regard to one very narrow exception that does not apply here. See United States v. Forma, 42 F.3d 759, 764 (2d Cir.1994)(stating rule and acknowledging exception where defendant seeks simply to offset amount of sovereign's recovery). Thus, there is no "implied waiver" of sovereign immunity as to counterclaims based on the government's commencement of an action. Similarly, there is no implicit waiver of sovereign immunity here, even if ancillary jurisdiction is present.
 
 
 26
 B. The Jurisdictional Provision in the Settlement Agreement
 
 
 27
 Plaintiffs-Appellants next contend that the United States waived sovereign immunity in the Settlement Agreement itself. However, it is a well-settled principle that the federal government's sovereign immunity may only be waived by Congressional enactment, and that "no contracting officer or other official is empowered to consent to suit against the United States." Mitchell, 463 U.S. at 215-16, 103 S.Ct. 2961; accord United States v. Shaw, 309 U.S. 495, 500-01, 60 S.Ct. 659, 84 L.Ed. 888 (1940); United States v. U.S. Fidelity & Guar. Co., 309 U.S. 506, 513, 60 S.Ct. 653, 84 L.Ed. 894 (1940). Therefore, to the extent that the Settlement Agreement purports to waive sovereign immunity, whoever acceded to the Settlement Agreement on behalf of the Government (which is unclear from the language of the agreement) was acting beyond the scope of his or her authority.
 
 
 28
 In addition, nothing about the Government's actions in this litigation constitutes a forfeiture of the right to raise sovereign immunity as a defense. Plaintiffs-Appellants point out that the Government first sought transfer to the District of Connecticut and then to the particular judge who was to hear the Connecticut Action, before asserting sovereign immunity; they accuse the Government of "forum-shopping." Regardless of the Government's motives, however, a sovereign's consent to suit via Congressional enactment is a prerequisite for subject-matter jurisdiction. Mitchell, 463 U.S. at 212, 103 S.Ct. 2961. An argument that subject-matter jurisdiction is lacking may be raised at any time, by any party, or even sua sponte by the court. See United States Fidelity Co., 309 U.S. at 514, 60 S.Ct. 653; Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 151, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Therefore, the Government's past failure to raise the defense of sovereign immunity in no way prevents this Court from considering the issue now. HUD could not have and did not waive sovereign immunity through the Settlement Agreement, so if there is no statutory waiver that applies to this suit, the defense of sovereign immunity precludes jurisdiction in this case except as to claims in equity.
 
 
 29
 C. Jurisdiction under the National Housing Act and the Tucker Act
 
 
 30
 Plaintiffs-Appellants contend, in their reply brief, that the "sue and be sued" clause of the National Housing Act, 12 U.S.C. §§ 1701 et. seq., constitutes a waiver of sovereign immunity for the purposes of this suit. Since this contention was never raised before the trial court and never raised to this Court until Plaintiffs-Appellants filed their reply brief, it is forfeited. See Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 568 n. 4 (2d Cir.), cert. denied, --- U.S. ----, 119 S.Ct. 406, 142 L.Ed.2d 329 (1998); cf. United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)(explaining the difference between waiver and forfeiture of a legal right).
 
 
 31
 Even had Plaintiffs-Appellants not forfeited this argument, there are two reasons why this suit does not fall within the scope of the "sue and be sued" clause of the National Housing Act. First, any waiver of immunity that was created by the National Housing Act is limited to funds under the control of the Secretary of HUD. C.H. Sanders Co. v. BHAP Housing Dev. Fund Co., 903 F.2d 114, 120 (2d Cir.1990); see also S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28, 36 (2d Cir.1979)(for the "sue and be sued" clause to apply, "any judgment for [Plaintiffs-Appellants] must be out of funds in the control of the Secretary as distinguished from general Treasury funds"). Here, the funds at issue have already been deposited into the general Treasury. Second, neither HUD nor the Secretary of HUD are named defendants in this action, nor were they signatories to the Settlement Agreement. The Settlement Agreement arose out of the Connecticut Action, a suit brought by the U.S. Attorney General on behalf of HUD in accordance with 12 U.S.C. § 1715z-4a. The Attorney General initiated and settled the Connecticut Action,[1] and it is therefore the United States against whom this suit is properly directed. This type of suit would therefore not be "consistent with" the statutory scheme governing HUD's activities, and is governed not by the National Housing Act, but by the Tucker Act.
 
 
 32
 The Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491, waives sovereign immunity as to contract claims against the United States, but vests the Court of Federal Claims with jurisdiction[2] to hear such claims. 28 U.S.C. § 1491(a)(1); see also South Windsor Convalescent Home, Inc. v. Mathews, 541 F.2d 910, 914 (2d Cir.1976). " '[A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.' " Massie v. United States, 166 F.3d 1184, 1188 (Fed.Cir.1999)(quoting Trauma Serv. Group v. United States, 104 F.3d 1321, 1326 (Fed.Cir.1997)).
 
 
 33
 Whether this Settlement Agreement qualifies as a valid contract remains to be established, but since Congress has not "displaced Tucker Act jurisdiction in favor of [any] other remedial scheme," Massie, at 1188 (quoting Del-Rio Drilling Programs, Inc. v. United States, 146 F.3d 1358, 1367 (Fed.Cir.1998)), it is the Court of Federal Claims, and not the Connecticut District Court, that should resolve all issues arising from this dispute.[3] Thus, the suit Plaintiffs-Appellants have brought belongs in the Court of Federal Claims, and is jurisdictionally barred from being brought in the Connecticut District Court.
 
 D. Jurisdiction under the Bankruptcy Code
 
 34
 Plaintiffs-Appellants also argue that the Massachusetts District Court (or the Connecticut District Court, following the change of venue) could have heard their claims under its bankruptcy jurisdiction. It is undisputed that 11 U.S.C. § 106 abrogates federal sovereign immunity with respect to most aspects of bankruptcy administration,[4] and that 28 U.S.C. § 1334 grants district courts (and bankruptcy courts by reference) jurisdiction over matters "related to cases under title 11." 28 U.S.C. § 1334(b) (emphasis added).
 
 
 35
 However, the Government correctly points out that, as to the D4 Plaintiffs, at the time this complaint was filed there were no bankruptcy cases still open under Title 11 to which this case could relate. The D4 Plaintiffs' bankruptcy proceedings were all dismissed in 1997. The "related to" jurisdiction provided in 28 U.S.C. § 1334 does not normally survive the dismissal of the underlying bankruptcy proceedings. In re Porges, 44 F.3d 159, 162 (2d Cir.1995). Therefore, we see no justification for extending bankruptcy jurisdiction to the hearing of the D4 Plaintiffs' claims.
 
 
 36
 With regard to the D3 Plaintiffs (whose bankruptcy proceedings were not dismissed, but rather, closed), the Settlement Agreement was "related to" their bankruptcy proceedings only insofar as the Settlement Agreement was incorporated into the debtors' plans of reorganization, as the Settlement Agreement itself specifically acknowledged. The D3 Plaintiffs incorporated the relevant provisions of the Settlement Agreement into their plans, including the jurisdictional clause in that agreement, which were approved by the District Court of Massachusetts on March 11, 1994. When the D3 Plaintiffs attempted to reopen their bankruptcy proceedings on March 11, 1996 in order to file a complaint against HUD, the Bankruptcy Court denied their motion on the basis that the dispute over the Settlement Agreement was between the equity holders and HUD and did not involve the reorganized debtors themselves. The Bankruptcy Court therefore found no cause to reopen the case under 11 U.S.C. § 350.
 
 
 37
 Implicit in the Bankruptcy Court's decision not to reopen the D3 Plaintiffs' bankruptcy cases is a finding that the instant suit is not "related to" the D3 Plaintiffs' bankruptcy proceedings; the Bankruptcy Court found that this suit is, in essence, a dispute between HUD, FHRC and Neil Ellis. We agree with this finding and further find that, as a result, this suit does not fall within the scope of 28 U.S.C. § 1334. Therefore, Plaintiffs-Appellants' attempt to invoke bankruptcy jurisdiction fails as well. At any rate, since the Bankruptcy Court has already decided not to reopen the D3 Plaintiffs' cases, and since the D3 Plaintiffs have never appealed that decision, any claims in the Bankruptcy Court are barred.
 
 E. The Claims for Equitable Relief
 
 38
 Plaintiffs-Appellants' final contention is that sovereign immunity does not bar their claims for equitable relief. The Administrative Procedure Act (APA), 5 U.S.C. § 702, which governs equitable claims against the United States, provides that "an action seeking relief other than money damages and stating a claim that an agency acted or failed to act in an official capacity shall not be dismissed on the ground that the suit is against the United States." Dickson v. Pierce, 1988 WL 26107, * 2 (E.D.N.Y., March 9, 1988). However, Plaintiffs-Appellants may not use the APA to overcome the sovereign immunity defense with regard to their equitable claims for three reasons: (1) the D3 Plaintiffs' equitable claims arise out of a contract claim, and are in essence seeking either money damages or specific performance of that contract; (2) the D4 Plaintiffs are effectively seeking specific performance of the Settlement Agreement; and (3) all Plaintiffs' equitable claims are moot.
 
 
 39
 Even though the APA creates a general waiver of sovereign immunity as to equitable claims, nothing in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. Where a claim arises out of a contract with the United States, the Tucker Act "impliedly forbids" relief other than the remedy provided by the Court of Federal Claims. Estate of Watson v. Blumenthal, 586 F.2d 925, 933-34 (2d Cir.1978). The types of relief specifically barred include any "injunctive, mandatory or declaratory relief against government officials when the result would be the equivalent of obtaining of money damages." B.K. Instrument, Inc. v. United States, 715 F.2d 713, 727 (2d Cir.1983). In other words, equitable claims may not be brought against the United States "where the prime objective of the plaintiff is to obtain money from the Government." Id.
 
 
 40
 In this case, the D3 Plaintiffs seek (1) a declaration that HUD violated the Settlement Agreement by failing to process the debtors' applications on a "first priority" basis, and (2) a declaration that the D3 Plaintiffs were entitled to decline to transfer the Trust Account funds to HUD pending the determination of this action. Either of these forms of relief would necessarily entitle the D3 Plaintiffs to money damages, since (a) they allege that HUD's failure to process the applications expeditiously caused them $500,000 in damages; and (b) the D3 Plaintiffs would recover the proceeds of the Trust Account funds were they to prevail in the litigation.
 
 
 41
 The D4 Plaintiffs' claims are also impliedly forbidden by the Tucker Act. Actions seeking specific performance of a contract, brought in order to avoid the Tucker Act's limitation on money judgments, are not allowed to be brought against the United States. B.K. Instrument, 715 F.2d at 728; see also North Star Alaska v. United States, 14 F.3d 36, 38 (9th Cir.), cert. denied, 512 U.S. 1220, 114 S.Ct. 2706, 129 L.Ed.2d 834 (1994)(APA does not waive sovereign immunity for contract claims seeking equitable relief). In this case, the D4 Plaintiffs are seeking (1) a declaration that HUD violated the Settlement Agreement in conducting the auction sale to Ocwen, and (2) a permanent injunction against the auction sale of Plaintiff-Appellants' loans, or an undoing of any auction sales already completed. Since the D4 Plaintiffs are, in essence, seeking specific performance of the Settlement Agreement, their claims are also barred.
 
 
 42
 Even were these claims allowable, all of Plaintiffs-Appellants' equitable claims are moot, as the District Court of Connecticut correctly held in its opinion. The $500,000 has already been transferred to HUD and deposited into the general Treasury, and the auction sale has already been completed. " 'Though federal courts possess great authority, they lack the power, once a bell has been rung, to unring it.' " Knaust v. City of Kingston, N.Y., 157 F.3d 86, 88 (2d Cir.1998)(quoting CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 48 F.3d 618, 621 (1st Cir.1995) ). The district court lacked jurisdiction to issue an injunction to hold trust funds when the trust corpus no longer existed, and could not issue an injunction to enjoin an auction that had already taken place. Therefore, the claims for injunctive relief were properly dismissed as well.
 
 
 43
 For the above reasons, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Morey L. Sear, Chief Judge of the United States District Court for the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 The authority of the Attorney General to supervise litigation to which the United States is a party is contained in 28 U.S.C. § 519. It is a plenary authority that embraces all aspects of litigation, including settlement. See 6 U.S. Op. Off. Legal Counsel 47, 59 (1982)
 
 
 [2]
 Tucker Act jurisdiction is often thought to be exclusive. However, contract claims against the United States may be asserted in U.S. district courts if there is an independent waiver of sovereign immunity outside the Tucker Act. See Sanders, 903 F.2d at 119
 
 
 [3]
 The "Little Tucker Act," 28 U.S.C. § 1346(a)(2), permits actions in contract against the United States to be brought in federal district courts, but only when the claims are for less than $10,000. It is undisputed that the claims at issue in this case exceed that amount
 
 
 [4]
 11 U.S.C. § 106 (Waiver of sovereign immunity) provides, in part:
 (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
 (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.
 (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.