Hammed ADELEKE, Plaintiff–
Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Docket No. 03–6051.

United States Court of Appeals,
Second Circuit.

Submitted: Oct. 31, 2003.

Decided: Jan. 20, 2004.

146

Hammed Adeleke, pro se, Fort Dix, New Jersey, for Plaintiff–Appellant.

Richard T. Lunger, Assistant United States Attorney, Eastern District of New York (Roslynn R. Mauskopf, United States Attorney; Deborah B. Zwany, Sarah J. Lum, Assistant United States Attorneys, on the brief), Central Islip, New York, for Defendant–Appellee.

Before: FEINBERG, KEARSE, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Plaintiff–Appellant Hammed Adeleke is presently incarcerated for smuggling heroin into the United States on May 15, 2001. *See United States v. Adeleke,* 01–CR–573 (ILG) (E.D.N.Y.2001). Subsequent to conviction, Adeleke moved *pro se* in the United States District Court for the Eastern District of New York pursuant to Fed. R.Crim.P. 41(e)—now Rule 41(g)[1]—for Defendant–Appellee United States of America either to return money and property seized incident to his arrest or to compensate him in money damages for the destruction of that property resulting from terrorist attacks on the World Trade Center, where the property was stored. Be-

---

1. Fed.R.Crim.P. 41(e) provided:

 A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move the district court for the district in which the property was seized for the return·of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

On December 1, 2002, Fed.R.Crim.P. 41(e) was redesignated Fed.R.Crim.P. 41(g) without substantive change. *See* Fed.R.Crim.P. 41 Advisory Committee Note to the 2002 amendments. The current rule provides:

 A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed.R.Crim.P. 41(g) (2003). To avoid confusion, throughout this opinion, the court refers to the rule by its present designation, 41(g).

cause no criminal proceedings were then pending against Adeleke, the district court construed the Rule 41(g) motion as a civil action in equity. *See, e.g., Mora v. United States,* 955 F.2d 156, 158 (2d Cir.1992).

Adeleke now appeals the district court's award of summary judgment in favor of the United States on his claim for money damages. He asserts that the district court erred in concluding that, because his property had been destroyed not by any act or omission of the United States but by the unforeseen actions of third parties, equity did not warrant an award of damages. He further appeals the district court's rejection of his due process claim that the government's property release notice obligated the United States to insure his property against loss or damage during the retrieval period. Finally, Adeleke insists that he is entitled to pursue damages under the Air Transportation Safety and System Stabilization Act, Pub.L. No. 107–42, 115 Stat. 230 (2001) ("Air Stabilization Act"), or the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*

We affirm the judgment of dismissal, albeit on somewhat different grounds than the district court. *See, e.g., Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 719 (2d Cir.1998) (noting that appellate court can affirm a judgment on any ground that finds support in the record). Specifically, we conclude that Adeleke's equitable claim for money damages should have been dismissed for lack of subject matter jurisdiction because sovereign immunity bars a federal court from ordering the United States to compensate for property that cannot be returned pursuant to Rule 41(g).[2] Sovereign immunity similarly deprived the district court of jurisdiction

over Adeleke's due process claim. To the extent jurisdiction over this claim may lie in the Court of Claims under the Tucker Act, *see* 28 U.S.C. § 1491, no transfer is warranted here because Adeleke plainly had no due process right to have the United States insure his seized property. As for Adeleke's statutory claims, we conclude that the district court lacks jurisdiction under the Air Stabilization Act to order an award from the Victims Compensation Fund and, further, that Adeleke is not eligible for such compensation. Similarly, his damages claim fails to come within the limited waiver of sovereign immunity in the Federal Tort Claims Act.

## I. *Factual Background*

On May 15, 2001, Hammed Adeleke traveled from Lagos, Nigeria, to John F. Kennedy International Airport in Queens, New York. There, he was arrested by United States Customs officials when a baggage inspection revealed approximately two kilograms of heroin concealed in the sides of Adeleke's briefcase. On June 18, 2001, Adeleke pleaded guilty to one count of importing heroin into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(3), and on October 17, 2001, he was sentenced to forty-six months' incarceration.

Incident to Adeleke's arrest, Customs officials seized $1,000 in cash and various items of personal property, which, according to Adeleke, included a Swiss watch, two gold rings decorated with diamonds, one gold chain, and one gold pendant, having a total value of $63,350, an impressive collection of jewelry for a man who, at sentencing, reported his monthly income

---

**2.** The district court noted the sovereign immunity issue in this case but considered itself bound by *Mora v. United States,* 955 F.2d at 160; *Soviero v. United States,* 967 F.2d 791,

792–93 (2d Cir.1992); and *Rufu v. United States,* 20 F.3d 63, 65 (2d Cir.1994), cases discussed *infra* at Section II.A.

for the previous ten years at $35.78.[3] Pending resolution of Adeleke's criminal case, his seized personal property was stored at the United States Customshouse located at 6 World Trade Center in Manhattan.

On June 22, 2001, within days of his guilty plea, United States Customs sent Adeleke a standard "Baggage Release Notice" advising him of three options to retrieve his personal property: (1) Adeleke or his designee could pick up his property at 6 World Trade Center; (2) Customs would ship the property to any designated address, provided Adeleke prepaid the shipping costs; or (3) Adeleke could hire private shippers to retrieve the property. The Notice provided that baggage not picked up within one year of seizure would be considered abandoned and sold at public auction or destroyed. Adeleke did not follow any of the procedures outlined in the release notice. Thus, when terrorists attacked lower Manhattan on September 11, 2001, Adeleke's unclaimed personal property, still inside 6 World Trade Center, was destroyed.

Four months later, on January 22, 2002, Adeleke filed a motion in the district court for the return of his property pursuant to Fed.R.Crim.P. 41(g). Soon thereafter, the United States voluntarily returned the $1,000 in cash seized from Adeleke, thereby rendering that part of his claim moot.[4] As for Adeleke's personal property, the United States moved for summary judgment on the grounds that the destruction was not attributable to any unreasonable conduct on its part so as to warrant an equitable award of money damages. Adeleke opposed the motion, maintaining that government negligence was not a prerequisite to an equitable damages award and that the release notice created a due process obligation on the United States to insure his property for the one-year retrieval period. He further argued that the Air Stabilization Act provided for compensation of his loss as a victim of the September 11th attacks.

The magistrate judge to whom the matter was referred agreed with Adeleke that circuit precedent did not require a showing of actual negligence by the United States to support an equitable award of damages on a post-conviction claim for Rule 41(g) relief. Nevertheless, she recommended summary judgment in favor of the United States because Adeleke had adduced no evidence that any government conduct had contributed to the loss, destruction, or disposal of his property. The magistrate explained: "The government merely held plaintiff's property at the time it was destroyed. Plaintiff's loss was caused by the [third-party] attack on the World Trade Center on September 11, 2001, which led to many great losses." *Adeleke v. United States,* 02–CV–0665, Magistrate Report and Recommendation at 8 (E.D.N.Y. Jan. 2, 2003). She further recommended dismissal of Adeleke's constitutional and statutory claims for failure to establish enforceable rights. *Id.* at 8–9.

By order dated February 12, 2003, the district court adopted the Report and Recommendation in its entirety and awarded summary judgment in favor of the United

---

**3.** The record contains no government inventory of the property seized from Adeleke at the time of his arrest, perhaps because these records, like the property, were destroyed when the World Trade Center collapsed. For purposes of this appeal, we accept Adeleke's list of belongings and his value estimate.

**4.** Nothing in the record before this court explains the government's reasons for not forfeiting the $1,000, based upon Adeleke's alleged post-arrest admission that this money represented the first installment on his payment for smuggling the seized heroin. *See* 21 U.S.C. § 853(a)(1).

States on Adeleke's request for money damages.

## II. *Discussion*

### A. *Sovereign Immunity Bars Adeleke's Equitable Claim for Money Damages*

 The district court concluded that Adeleke's equitable claim for damages failed because Adeleke could not show that the United States' conduct contributed to the destruction of his property, a causation requirement inferred from language in *Mora v. United States,* 955 F.2d at 160 (the government can be liable for damages "when [it] gives away, loses or destroys a prisoner's property") and *Soviero v. United States,* 967 F.2d at 791 (a plaintiff "should be permitted to seek damages if the district court determines the government's conduct renders it liable for such"). We identify a more fundamental obstacle to Adeleke's effort to seek compensation from the public treasury: the sovereign immunity of the United States. Before discussing sovereign immunity, however, we briefly review our prior cases discussing equitable damages awards for lost or destroyed seized property.

Federal Rule of Criminal Procedure 41(g) permits a person aggrieved by the government's unlawful seizure or deprivation of property to move for specific relief: the property's return. Over a decade ago, in *Mora v. United States,* 955 F.2d at 160, this court held that, even after the conclusion of criminal proceedings, federal courts may exercise equitable jurisdiction to hear Rule 41(g) motions. Further, if demanded property is no longer available for return, *Mora* instructs district courts to consider "whether the government's conduct renders it liable for damages . . . as an equitable remedy." *Id.* at 161. Later that same year, this court more emphatically recognized the availability of an equitable award

of damages when the government cannot return seized property: "Simply because the government destroys or otherwise disposes of property sought by the movant, the motion for its return is not thereby rendered moot. When a court possessing equitable powers has jurisdiction over a complaint that seeks equitable relief, it has authority to award whatever damages are incident to the complaint." *Soviero v. United States,* 967 F.2d at 793 (citation omitted). The point was reiterated two years later in *Rufu v. United States,* 20 F.3d at 65: "That the Government has destroyed or otherwise disposed of the property sought by the movant does not render the motion moot, since the court has authority to award damages in lieu of the equitable relief sought."

*Mora, Soviero,* and *Rufu* presumably give effect to the well-established rule, derived from common law, that "where there is a legal right, there is also a legal remedy." *Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. 60, 66, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (quoting 3 W. Blackstone, Commentaries 23 (1783)). In *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 239, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the Supreme Court explained that the "existence of a statutory right implies the existence of all necessary and appropriate remedies." More recently, *Franklin v. Gwinnett County Public Schools,* 503 U.S. at 69, 112 S.Ct. 1028, similarly noted "that if a right of action exists to enforce a federal right and Congress is silent on the question of remedies, a federal court may order any appropriate relief."

In identifying money damages as "appropriate" equitable relief when seized property was unavailable for return pursuant to Rule 41(g), neither *Mora* nor its progeny, however, addressed the sovereign immunity implications of such an award against the United States. Accordingly,

we are free, and obligated, to do so now. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("When questions of jurisdiction have been passed on in prior decisions *sub silentio,* this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." (internal quotation marks omitted)); *see also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (emphasizing "requirement that jurisdiction be established as a threshold matter"); *Garay v. Slattery,* 23 F.3d 744, 745 n. 2 (2d Cir. 1994) (finding it necessary to address jurisdictional challenge despite prior cases assuming jurisdiction).

■ It is, of course, "axiomatic" under the principle of sovereign immunity "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *accord Department of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 260, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (" 'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.' " (quoting *FDIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994))). Moreover, waivers of sovereign immunity must be "unequivocally expressed" in statutory text, and cannot simply be implied. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (internal quotation marks omitted); *accord United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) (and cases cited therein). Thus, in *United States v. Nordic Village, Inc.,* the Supreme Court refused to infer from the bankruptcy court's equitable *in rem* jurisdiction a waiver of the United States' sovereign immunity with respect to incidental monetary awards. Drawing a distinction equally applicable to the exercise of equitable jurisdiction in this case, *Nordic Village* explained that "[a] suit for payment of funds from the Treasury is quite different from a suit for the return of tangible property." 503 U.S. at 39, 112 S.Ct. 1011. The sovereign's consent to be sued for the latter form of relief does not imply its consent to be sued for the former because precedent teaches "that the Government's consent to be sued must be construed strictly in favor of the sovereign, and not enlarged beyond what the language requires." *Id.* at 34, 112 S.Ct. 1011 (internal quotation marks and citations omitted); *see also FDIC v. Meyer,* 510 U.S. at 475, 114 S.Ct. 996 ("the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit" (internal quotation marks omitted)).

In *Lane v. Pena,* 518 U.S. 187, 196, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996), the Supreme Court specifically addressed the effect of sovereign immunity on the rule that a legal right presumes a remedy, explaining that "when it comes to an award of money damages, sovereign immunity places the Federal Government on an entirely different footing than private parties." In actions involving private parties, federal courts may well have the power to award "any appropriate relief" to vindicate the right at issue. *Id.* (quoting *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. at 70–71, 112 S.Ct. 1028). But where the federal government is itself sued, "the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived." *Id.* at 197, 112 S.Ct. 1028 (quoting and adopting argument in Respondent's brief). This may leave some aggrieved parties without relief, but that is

inherent in the doctrine of sovereign immunity.

Applying these sovereign immunity principles to this case, we now join in the unanimous conclusion of those sister circuits that have addressed the issue: Rule 41(g), which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property. *See Okoro v. Callaghan,* 324 F.3d 488, 491 (7th Cir. 2003); *United States v. Hall,* 269 F.3d 940, 943 (8th Cir.2001); *United States v. Potes Ramirez,* 260 F.3d 1310, 1315–16 (11th Cir.2001); *United States v. Jones,* 225 F.3d 468, 470 (4th Cir.2000); *United States v. Bein,* 214 F.3d 408, 415 (3d Cir.2000); *Pena v. United States,* 157 F.3d 984, 986 (5th Cir.1998); *see also McBean v. United States,* 43 Fed.Appx. 853, 854 (6th Cir. 2002) (unpublished).[5] Thus, although we continue to adhere to the *Mora* and its progeny insofar as those cases recognize federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) even after the conclusion of criminal proceedings, we here clarify that such equitable jurisdiction does not permit courts to order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return.

Such monetary awards are barred by sovereign immunity.

In sum, because subject matter jurisdiction was lacking, Adeleke's equitable claim for money damages pursuant to Rule 41(g) was properly dismissed.[6]

B. *Adeleke's Due Process Claim to Insurance Is Barred by Sovereign Immunity*

■ Relying on the Baggage Release Notice that advised him that he had one year in which to claim his seized property, Adeleke asserts a due process right to government insurance of that property during the retrieval period. This claim also faces the obstacle of sovereign immunity.

On appeal, Adeleke cites the Tucker Act, 28 U.S.C. § 1491, and the "Little Tucker Act," *id.* § 1346(a)(2), for the necessary waiver of sovereign immunity. Those Acts provide "subject matter jurisdiction ... for non-tort claims 'against the United States ... founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States.'" *C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.,* 903 F.2d 114, 119 (2d Cir.1990) (quoting 28 U.S.C. § 1346(a)(2)). The Tucker Act confers ju-

---

**5.** Although the Ninth Circuit, whose decision in *United States v. Martinson,* 809 F.2d 1364, 1368 (1987) (recognizing the possibility of damages pursuant to Rule 41(g) when the government destroys seized property), was cited approvingly in *Mora,* has not expressly addressed the issue of sovereign immunity in the context of Rule 41(g), that court has held that another Federal Rule of Criminal Procedure, Rule 16(d)(2), does not waive sovereign immunity to permit a court-ordered monetary sanction against the United States for a discovery violation. *See United States v. Woodley,* 9 F.3d 774, 781–82 (1993). Rule 16(d)(2) authorizes courts to "prescribe such terms and conditions as are just" to remedy discovery violations—broader relief than the return

of property specified in Rule 41(g)—nevertheless, the Ninth Circuit ruled that such language was "insufficient" to constitute the "express waiver of sovereign immunity" necessary to support a monetary award against the United States. *Id.* at 782.

**6.** Because Adeleke concedes that the destruction of his property was not actually caused by a United States official, there is no reason to consider the possibility of a *Bivens* action against any individual defendant in this case. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

risdiction over such claims upon the Court of Claims, *see* 28 U.S.C. § 1491; the Little Tucker Act confers concurrent jurisdiction upon district courts when the amount of the damage claim is $10,000 or less, *see id.* § 1346(a)(2). *See Clinton v. Goldsmith,* 526 U.S. 529, 539 n. 13, 540 n. 14, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999). Because Adeleke sues to recover substantially more than $10,000—$63,350—the Tucker Acts cannot provide the waiver of sovereign immunity necessary for him to pursue his claim in the district court. *See C.H. Sanders Co. v. BHAP Housing Dev. Fund Co.,* 903 F.2d at 119; *see also FDIC v. Meyer,* 510 U.S. at 475, 114 S.Ct. 996 ("the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit" (internal quotation marks omitted)); *Millares Guiraldes de Tineo v. United States,* 137 F.3d at 719 ("Any limitations imposed by the waiver statute, whether they be substantive, procedural, or temporal, are to be strictly applied against the claimant."). Adeleke identifies no other provision empowering the district court to hear his due process claim, and we have found none.[7]

■ Under 28 U.S.C. § 1631, if a court lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed," which, in this case, would be to the Court of Claims. *See Waters v. Rumsfeld,* 320 F.3d 265, 272 n. 8 (D.C.Cir.2003) (remanding Tucker Act claim for more than $10,000 to the district court for transfer to Court of Claims); *see also Phillips v. Seiter,* 173 F.3d 609, 610–11 (7th Cir.1999) (discussing authority to

transfer or dismiss under § 1631). We do not remand for transfer in this case, however, because Adeleke so plainly fails to allege a property right to insurance that transfer would not serve "the interest of justice." *See Phillips v. Seiter,* 173 F.3d at 610–11 (declining to remand a meritless claim to the district court for possible § 1631 transfer to court with jurisdiction); *see also Haugh v. Booker,* 210 F.3d 1147, 1150 (10th Cir.2000) (finding it not in the interest of justice to transfer a meritless claim).

■ To establish a due process right, a party must demonstrate a " 'legitimate claim of entitlement' to," as opposed to the mere "need or desire for, or unilateral expectation of," the government conduct at issue. *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir.1998) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Generally, an "entitlement" depends on mandatory, rather than discretionary, government conduct. *See Dun & Bradstreet Corp. v. United States Postal Serv.,* 946 F.2d 189, 193 (2d Cir.1991). Adeleke points to no statute, regulation, or contract that obliged the United States to insure his seized property; his sole source for this right is the Baggage Retrieval Notice. But this Notice plainly does not create a constitutional entitlement to insurance. The Notice simply advises that "[a]ny luggage not picked up within one (1) year of the date of seizure/arrest will be considered abandoned and will be sold at public auction or destroyed." Appendix for Defendant–Appellee at 29. It in no way suggests, much

---

**7.** Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702(a), which waives sovereign immunity for claims of "legal wrong [sustained] because of agency action," is not here applicable because it pertains only to suits "seeking relief other than money

damages," *id. See Department of the Army v. Blue Fox, Inc.,* 525 U.S. at 261–64 (holding that sovereign immunity bars an APA claim for money damages even when pursued as an equitable remedy).

less mandates, that the property will be insured during that retrieval period.

Accordingly, because the district court lacked jurisdiction over Adeleke's due process claim and because the interest of justice would not be served by a transfer to the Court of Claims, we affirm the district court's dismissal of this complaint against the United States.

### C. *A District Court Lacks Jurisdiction to Order Awards from the Victims Compensation Fund*

■ Adeleke asserts that he is entitled to sue for an award of damages from the Victims Compensation Fund created by Title IV of the Air Stabilization Act. *See* Air Stabilization Act § 401 *et seq.* Claims for relief from the Victims Compensation Fund, however, do not lie in the district courts; they must be filed with the Special Master appointed by the Attorney General. *See id.* § 405(a), (c)(3)(B). Thus, sovereign immunity barred the district court from hearing this claim.

■ Further, there is no need to explore the possibility of a transfer in this case because Adeleke is not eligible for relief under Title IV of the Act. As Title IV makes plain, the purpose of the Fund is to compensate persons who were "physically injured or killed" as a result of the terrorist attacks of September 11, 2001. *Id.* § 403; *see Canada Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG,* 335 F.3d 52, 55 (2d Cir.2003); *see also* Air Stabilization Act § 405(c)(2) (specifically defining eligible claimants). It is undisputed that Adeleke sustained no physical injury from the September 11th attacks. His sole claim is for destroyed personal property, a loss not compensable from the Victims Fund.

Accordingly, the district court properly dismissed this statutory claim.

### D. *Federal Jurisdiction Is Lacking Under the FTCA to Award Adeleke Damages for Property Destroyed While in the Custody of Law Enforcement Officials*

■ Adeleke submits that he should be permitted to pursue damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"). The FTCA waives sovereign immunity for "claims against the United States, for money damages ... for ... loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.* § 1346(b). This waiver, however, operates subject to numerous conditions, each of which must be satisfied for a court to exercise jurisdiction. *See Millares Guiraldes de Tineo v. United States,* 137 F.3d at 719. One such condition is that a plaintiff must first file an administrative claim with the appropriate federal agency before suing for relief in federal court. *See* 28 U.S.C. § 2675(a); *Millares Guiraldes de Tineo v. United States,* 137 F.3d at 719. This procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se. See McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993). Because it is undisputed that Adeleke did not file any administrative claim with respect to his seized personal property, he cannot sue for damages under the FTCA.

■ Even if Adeleke had satisfied the statute's administrative exhaustion requirement, he would confront a more serious obstacle to federal jurisdiction. Specifically, the FTCA excepts from its § 1346(b) waiver of sovereign immunity, "[a]ny claim arising in respect of ... the detention of any goods, merchandise, or other property by any officer of customs

... or any other law enforcement officer." 28 U.S.C. § 2680(c). Section 3 of the Civil Asset Forfeiture Reform Act of 2000, Pub.L. No. 106–185, 114 Stat. 202, creates an exception to 28 U.S.C. § 2680(c), permitting the United States to be sued for injury or loss of goods or property in law enforcement custody for purposes of forfeiture. *See id.* § 2680(c)(1)-(4). To come within this amendment, however, a claimant must show not only that his "property was seized for the purpose of forfeiture," *id.* § 2680(c)(1), but also that he "was not convicted of a crime" for which his property was subject to forfeiture, *id.* § 2680(c)(4). Although the present record does not indicate whether Adeleke's property was seized for the purpose· of forfeiture, his inability to satisfy the latter requirement is beyond question. On his own guilty plea, he stands convicted of heroin smuggling, and that conduct would necessarily be the ground for the presumed forfeiture seizure. *See* 21 U.S.C. § 853(a). Accordingly, the Civil Asset Forfeiture Reform Act does not bring Adeleke's claim within the FTCA.

In *Alliance Assurance Co. v. United States,* 252 F.2d 529, 533–34 (2d Cir.1958), this court recognized another exception to § 2680(c) for cases involving government negligence in the destruction, injury, or loss of goods in the possession of law enforcement officials. We cited approvingly to this holding in *Mora v. United States,* 955 F.2d at 160. But *Alliance Assurance* affords Adeleke no relief from § 2680(c)'s exception to the FTCA's sovereign immunity waiver; he concedes that the destruction of his property was not caused by government conduct, negligent or otherwise.

There is, however, a more basic concern with our application of *Alliance Assurance*

to this or any other case: its negligence exception was explicitly rejected by the Supreme Court in *Kosak v. United States,* 465 U.S. 848, 854–61, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) ("We find the conclusion reached by ... the Second Circuit far from 'inescapable.'"). Reviewing the plain language, legislative history, and underlying purpose of § 2680(c), *Kosak* concluded that the provision precludes "any claim 'arising out of' [law enforcement officials'] detention of goods," including "a claim resulting from negligent handling or storage of detained property." *Id.* at 854, 104 S.Ct. 1519.

 District courts have repeatedly observed that the *Alliance Assurance* interpretation of § 2680(c), thereafter endorsed in *Mora,* is irreconcilable with *Kosak. See, e.g., Haughton v. FBI,* 99 Civ. 3418, 1999 WL 1133346, at *6 n. 1 (S.D.N.Y. Dec.10, 1999); *Schreiber v. United States,* 96 Civ. 0122, 1997 WL 563338, at *3–*4 (S.D.N.Y. Sept.8, 1997); *Bakary v. United States,* 97 Civ. 1071, 1997 WL 469987, at *1 (E.D.N.Y. Jun.17, 1997); *Otonye v. United States,* 903 F.Supp. 357, 360 n. 4 (E.D.N.Y.1995); *Garnay, Inc. v. M/V Lindo Maersk,* 816 F.Supp. 888, 897 (S.D.N.Y.1993). We think it best to eliminate the confusion caused by this disparity. We therefore realign this court with *Kosak* and hold that there is no "negligence" exception to § 2680(c)'s retention of sovereign immunity for claims pertaining to the detention of property by law enforcement officials.

Thus, both because Adeleke's case was not administratively exhausted and because it falls squarely within the § 2680(c) exception to the FTCA waiver of sovereign immunity, we conclude that there is no federal jurisdiction under that statute to hear his damages claim.[8]

8. The express reservation of sovereign immu- nity in § 2680(c) reinforces our conclusion

III. *Conclusion*

To summarize, we conclude that the complaint in this case was properly dismissed because (1) sovereign immunity deprived the district court of jurisdiction to order the United States to pay Adeleke money damages for property that could not be returned pursuant to Fed.R.Crim.P. 41(g); (2) sovereign immunity also bars Adeleke's due process claim to government insurance of his property during the one-year retrieval period, and the claim, being meritless, does not warrant transfer to the Court of Claims; (3) Adeleke cannot seek an award of property damages from the Air Stabilization Act's Victim Compensation Fund; and (4) Adeleke's damage claim fails to fall within the sovereign immunity waivers of the FTCA.[9] Accordingly, the district court judgment is hereby AFFIRMED.

that federal courts lack equitable jurisdiction to award money damages for property that cannot be returned pursuant to Fed.R.Crim.P. 41(g). To allow a party to recover damages against the United States pursuant to the equitable application of a procedural rule that makes no mention of such relief at the same time that Congress, by statute, expressly reserves sovereign immunity to bar such awards would be more than incongruous; "it would be directly contrary to the intent of Congress." *United States v. Bein*, 214 F.3d at 416.

9. To the extent this decision departs from our earlier decisions in *Alliance Assurance Co. v. United States*, 252 F.2d 529, and *Mora v. United States*, 955 F.2d 156 (and its progeny), we note that this opinion was circulated before filing to all active members of the court. *See Coca–Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Wkrs. Union Local 812*, 242 F.3d 52, 55 (2d Cir.2001).