Tunde A. ADEYI, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 06 CV 3842(ARR)(LB).

United States District Court, E.D. New York.

May 4, 2007.

Tunde A. Adeyi, Ray Brook, NY, pro se.

Katya Townshend Price Jestin, Kevin P. Mulry, Assistant U.S. Attorney, United States Attorney's Office, Eastern District of New York, Brooklyn, NY, for Defendant.

## OPINION AND ORDER

ROSS, District Judge.

*Pro se* plaintiff Tunde A. Adeyi commenced the instant action in May 2006 with the filing of a motion for return of seized property. (Dkt. No. 1.) Presently pending before the court are plaintiff's motion for judgment on the pleadings and defendant's motion for dismissal or summary judgment.

For the following reasons, the court denies Adeyi's motion. The court grants in part and denies in part the government's motion to dismiss. The court grants the government's motion insofar as sovereign immunity bars Adeyi's claims for relief pursuant to the court's equitable jurisdiction under Rule 41(g), the Administrative Procedure Act, and the Federal Tort Claims Act. Furthermore, the court construes Adeyi's Rule 41(g) motion as a motion to set aside forfeiture under 18 U.S.C. § 983(e). Accordingly, the court directs the government to show cause, within thirty days of the date of this order, by additional evidentiary submissions on the efforts it made to notify Adeyi as well as the actual date of forfeiture and by additional legal arguments, why the court should not set aside the forfeiture under § 983(e). The court directs Adeyi to respond to the government's submissions within forty-five days of the date of this order.

## BACKGROUND

### Arrest and Conviction

On March 12, 2001, Adeyi was arrested at J.F.K. Airport after screening of his luggage revealed that he had transported more than 30 kilograms of heroin from Nigeria. On October 17, 2001, following a jury trial, Adeyi was convicted of importation and possession with intent to distribute heroin in violation of 21 U.S.C. §§ 952 and 841. On March 18, 2005, the court sentenced Adeyi to a term of 156 months imprisonment, followed by five years of supervised release. (See Docket for 01 Crim. 351.) Adeyi's conviction was affirmed on appeal. *See United States v. Adeyi,* 165 Fed.Appx. 944 (2d Cir.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 194, 166 L.Ed.2d 158 (2006). On January 22, 2007, this court denied Adeyi's motion for relief pursuant to 28 U.S.C. § 2255. (See Docket for 06 Civ. 1454.)

### Seizure and Motion for Return of Property

In the instant action, Adeyi alleges that upon his arrest at J.F.K. Airport on March 12, 2001, government agents seized personal property from him, including: ATM bank cards; credit cards; and hearing-aid cleaning equipment. (Dkt. No. 1.) With his motion for judgment on the pleadings, Adeyi lists additional items of property he claims were seized at the time of his arrest.[1] (See Dkt. No. 6 at 1–7.) Adeyi has submitted a U.S. Customs Service Invento-

---

1. The additional items are jewelry (including gold chains, pendants, diamonds, and a wristwatch); clothes (including leather jackets, shoes); wedding photos and videos; personal letters; his passports; birth certificates for his two children in Nigeria; and other important documents (his social security card; a police report of a 1990 robbery; his license to drive a taxicab; documents relating to land Adeyi inherited in Nigeria from his father; and other land documents). (Dkt. No. 6 at 1–7.) (Adeyi argues that his son Sulyman was unable to enter the United States because of the loss of his birth certificate. (Dkt. No. 24.))

ry of Passenger's Personal Property form listing items seized from him and indicating that they were contained in a green "Echolac" suitcase. (See Dkt. No. 6.) Adeyi claims that the inventory form does not list all of the items agents seized from him.[2] (See Dkt. No. 1.) Adeyi also disputes the inventory form's $500 valuation of the items seized, claiming that the hearing aid itself is worth $2,575. (Dkt. No. 6 at 8.)

Initially, Adeyi sought the return of his property. (Dkt. No. 1.) Having learned that his property was destroyed, Adeyi seeks actual and punitive damages of $10 million, (Dkt. No. 6 at 4; Dkt. No. 19 at 11), as well as "an opportunity for consequential damages." (Dkt. No. 23 at 2.)

By Order dated August 23, 2006, the court directed the United States Attorney to respond to Adeyi's motion for return of property. (Dkt. No. 2.) By letter dated August 28, 2006, Assistant United States Attorney Katya Jestin related that she had been advised by the "United States Immigration and Customs Enforcement Service ('ICE') that the defendant's baggage was destroyed on November 17, 2004" when Adeyi failed to submit, within the required one year period, the paperwork necessary to secure the release of his baggage. (Dkt. No. 4.)

By Order dated August 28, 2006, the court directed the government to submit appropriate evidentiary submissions in accordance with *Rufu v. United States*, 20 F.3d 63, 65 (2d Cir.1994) (*per curiam*), and to provide Adeyi with notice pursuant to the Local Civil Rules. *See Rufu*, 20 F.3d at 65 ("[T]he district court was required to take evidence and make factual findings to identify any items still in the possession of the Government and any

items that might have been lost."). (Dkt. No. 3.)

*Pending Motions*

On September 19, 2006, Adeyi filed a motion for judgment on the pleadings. (Dkt. No. 6.) Because the government has not filed an answer and the pleadings are therefore not closed, such a motion is premature. However, in light of Adeyi's *pro se* status and the fact that he has presented matters outside the pleadings, the court treats his motion as one for summary judgment. *See* Fed.R.Civ.P. 12(c); *see also Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 94 (2d Cir. 2006) (treating premature judgment on the pleadings as summary judgment):

On November 8, 2006, the government moved for dismissal or summary judgment, providing Adeyi with appropriate notice pursuant to Local Civil Rules 12.1 and 56.2. (Dkt. No. 13, 17.) The government's submissions indicate that the items seized from Adeyi on March 12, 2001, were administratively forfeited to the government and destroyed because no claim for them was filed. (Govt. Mem. 2; Nielsen Decl.)

In support of its motion, the government argues that sovereign immunity bars Adeyi's claim for relief because the property Adeyi "seeks has been destroyed, and is thus unavailable for return." (Govt.Mem.6–7.) The government further argues that Adeyi cannot recover under the Federal Tort Claims Act ("FTCA") because he has not exhausted his administrative remedies, pursuant to 28 U.S.C. § 2675(a), and, moreover, the Second Circuit has held in extremely similar circumstances that the FTCA does not waive sovereign immunity. *See Adeleke v. Unit-*

---

**2.** The inventory form indicates seizure of $88.00 in U.S. currency. Adeyi states that the government returned this money to him in March 2001 by certified mail to the Metropolitan Detention Center in Brooklyn. (See Dkt. No. 20 at 12; Dkt. No. 19 Ex. 1.)

ed States, 355 F.3d 144, 153–54 (2d Cir. 2004). (Govt.Mem.7–9.)

Adeyi, for his part, argues that the government deprived him of property without due process of law by failing to notify him of the forfeiture; that the government destroyed his property prior to his sentencing and the resolution of his § 2255 motion; and that the government had to return the property to him once its interest in it for use during the criminal proceedings ceased.

## DISCUSSION

### Construing Adeyi's Rule 41(g) Motion

Adeyi commenced this action by filing a motion for return of property under Fed. R.Crim. Proc. 41(g).[3] Because no criminal proceedings were then pending against Adeyi, the court construes this motion as a civil action. See Bertin v. United States, 478 F.3d 489, 493 (2d Cir.2007) (construing complaint seeking return of property or just compensation and punitive damages as asserting claims under FTCA and Rule 41(g)); see also Adeleke, 355 F.3d at 149, 151 ("[W]e continue to adhere to the Mora and its progeny insofar as those cases recognize federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) even after the conclusion of criminal proceedings...."); Rufu v. United States, 20 F.3d 63, 65 (2d Cir.1994); Onwubiko v. United States, 969 F.2d 1392, 1397 (2d Cir.1992) ("Where criminal proceedings against the movant have already been completed, a district court should treat a rule 41[g] motion as a civil complaint."); Mora v. United States, 955 F.2d 156, 158, 160 (2d Cir.1992) ("[T]he district court should have liberally construed Mora's petition as a complaint" at law.).

Because Adeyi is proceeding pro se, the court must liberally construe his pleadings and submissions to raise the strongest arguments they suggest. Bertin, 478 F.3d at 491.

### Adeleke v. United States

The government's arguments for sovereign immunity rest almost entirely on the Second Circuit's decision in Adeleke, 355 F.3d 144 (2d Cir.2004). This reliance is justified insofar as the facts in Adeleke are similar to those in this case. And the two cases are remarkably similar. Both Adeleke and Adeyi traveled from Nigeria to the United States, where they were arrested at J.F.K. Airport after inspection of their luggage revealed heroin. Adeleke pleaded guilty to importing heroin, while Adeyi stood trial and was convicted of importing heroin and possessing with intent to distribute. Both Adeleke and Adeyi filed post-conviction motions for the return of their luggage, which had been seized at the airport upon their arrests. Both were unable to obtain the return of their property because their luggage had been destroyed. See Adeleke, 355 F.3d at 147–48.

However, there is a limit to the similarities. As Adeyi points out, (Dkt. No. 19 at 5), Adeleke "concede[d] that the destruction of his property was not actually caused by a United States official." Adeleke, 355 F.3d at 151 n. 6. Adeleke's luggage was destroyed in the September 11, 2001, terrorist attacks. Id. at 148. In

---

**3.** Rule 41(g) provides:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

contrast, here the government concedes that a government official caused the destruction of Adeyi's property. Adeyi's property was destroyed after being administratively forfeited to the government. (Nielsen Decl. 2–6.)

### Inadequate Notice

This distinction requires denial in part of the government's motion at this time. This is because, at least on the present submissions, it appears that the government did not employ adequate means to provide notice to Adeyi of his right to contest the administrative forfeiture of his property.

### Administrative Forfeiture Proceedings

As part of its motion papers, the government has proffered evidence of the steps it took to notify Adeyi of the pending forfeiture of his property—specifically, the declaration of Scott Nielsen, director of the U.S. Customs and Border Protection ("CBP"), Office of Fines, Penalties and Forfeitures at J.F.K. Airport, and appended exhibits. This evidentiary proffer alone suggests that the government took woefully inadequate steps to provide notice to Adeyi.

On November 11, 2004, the government sent a "Final Administrative Action" letter to Adeyi at 1705 Nelson Avenue, # 2D, Bronx, N.Y. 10453. (Nielsen Decl. Ex. A.) This letter was intended to notify Adeyi that items seized on March 12, 2001— "black 'Tweed' rollerbag, green 'Echolac' suitcase, cloth sacks from rollerbags"— would be "summarily forfeited to the government as provided for in 19 U.S.C. [§§ ] 1607, 1608 and 1609." The letter informed Adeyi that he could stop the summary forfeiture proceedings by filing a claim within 20 days, and, unless indigent, posting a cash bond; if no claim were filed by December 1, 2004, the items would be forfeited.

A November 11, 2004, "Notice of Seizure and Intent to Forfeit" form lists the same items as the "Final" letter under the appropriate seizure number and lists several other seizures to be forfeited. (Nielsen Decl. Ex. B.) It is not clear where this notice was published and Nielsen's declaration does nothing more than describe the exhibit. (*See* Nielsen Decl. 3.) Perhaps it is the posting notice meant to appear on the CBP's Fines, Penalties & Forfeitures bulletin board, as the letter to Adeyi suggests. (*See* Nielsen Decl. Ex. A.)

Also attached is an "Order to Destroy and Record of Destruction of Forfeited, Abandoned, or Unclaimed Merchandise." (Nielsen Decl. Ex. C.) This Order, signed on November 1, 2004, directed destruction by the "most cost effective" method. The record of destruction is signed and date-stamped, although the date is illegible. The government's initial response to the instant action stated that Adeyi's "baggage was destroyed on November 17, 2004." (Dkt. No. 4.)

Nielsen simply avers that no claim was received and CBP "no longer has any property seized from plaintiff Tunde A. Adeyi." (Nielsen Decl. 4, 6.)

### Potential Procedural Deficiencies with the Administrative Forfeiture

The court notes that even if Adeyi had filed a claim before the December 1, 2004, deadline set forth in the final notice letter and the posted notice, it might have been too late to recover his property. The court is also troubled by the seeming inadequacy of the government's efforts to provide notice to Adeyi.

■ Federal courts lack jurisdiction to review the merits of administrative forfeiture decisions. However, federal courts have jurisdiction to determine whether the government provided legally adequate notice of forfeiture. *Weng v. United States,*

137 F.3d 709, 713 (2d Cir.1998), *abrogated on other grounds by Dusenbery v. United States,* 534 U.S. 161, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002).

■ The standard for adequate notice under the Due Process Clause derives from *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). *See Dusenbery,* 534 U.S. at 167, 122 S.Ct. 694. "[T]he Due Process Clause does not require . . . heroic efforts by the Government" nor does it require that petitioner actually receive notice. *Dusenbery,* 534 U.S. at 170–71, 122 S.Ct. 694. Rather, the Due Process Clause requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. When notice is a person's due the means employed must be such as one desirous of actually informing the absentee might reasonably adopt." *Weng,* 137 F.3d at 713 (*quoting Mullane,* 339 U.S. at 314–15, 70 S.Ct. 652).

■ Most importantly, for present purposes, notice is not reasonably calculated under all the circumstances to apprise a property owner of the forfeiture if the government knew that the owner was not at the address to which notification was sent. *See Dosunmu v. United States,* 361 F.Supp.2d 93, 98 (E.D.N.Y.2005) (citing cases finding notice not reasonably calculated when sent to home address when government knew person was incarcerated); *see also Alli–Balogun v. United States,* 281 F.3d 362, 369 (2d Cir.2002) (forfeiture violated inmate's due process rights because notice sent to one facility after inmate had been transferred by government to another facility); Stefan D. Cassella, *Asset Forfeiture Law in the United States,* § 4–10 at 167 & n. 115 (2007) ("[D]ue process is *not* satisfied if the

Government sends the notice to the wrong prison, even if the prisoner was formerly in that facility and the Government's error was made in good faith.") (collecting cases).

In this case, the present submissions indicate that the government knew Adeyi was in custody at the Metropolitan Detention Center ("MDC") in Brooklyn from 2001 to 2005, knew also that 1706 Nelson Avenue, # 2D, was not Adeyi's current home address, and yet still sent the "Final Administrative Action" letter to Nelson Avenue.

The CBP returned to Adeyi his $88 in March 2001 by certified mail to the MDC. (Adeyi Aff. 4, Dkt. No. 19; Dkt. No. 19 Ex. 1.) In October 2001, at Adeyi's criminal trial, the Nelson Avenue address was a subject of dispute. Adeyi had listed 1706 Nelson Avenue on his customs declaration. The government called William Santiago, who resided at 1706 Nelson Avenue, # 2D, since August 18, 1999, to testify that Adeyi did not live there. (Trial Tr. 74–76.) Adeyi testified that he listed Nelson Avenue on the form because it was the address at which he had lived the longest; he had used it for his green card and so continued to use it for official declarations. (Trial Tr. 253–254.) Adeyi testified that his last known address in New York was on Kruger Avenue in the Bronx. (Trial Tr. 253.) Moreover, in summation, the government argued that Nelson Avenue was not Adeyi's correct address, not the place he planned on staying upon his arrival. (Trial Tr. 277.) The government argued this to suggest that Adeyi lied on his customs declaration in order "to avoid detection." (*Id.*)

Under these circumstances, sending notice to Adeyi at Nelson Avenue was insufficient. The present submissions suggest that the administrative forfeiture of Adeyi's property violated his due process

rights. Because the government has not specifically addressed the issue of notice, at this time the court reserves judgment on whether the government provided legally adequate notice.

### Potential Claims for Relief

If the court were to conclude that the government violated Adeyi's due process rights by failing to provide adequate notice, the question of what relief is available arises. The government argues that, pursuant to *Adeleke v. United States*, 355 F.3d 144 (2d Cir.2004), the court lacks jurisdiction to consider Adeyi's claims because his "property has been destroyed, and is thus unavailable for return." (Govt.Mem.4–7.)

In *Adeleke*, the Second Circuit did not hold that sovereign immunity bars any claim for relief when seized property is not available for return. *Adeleke* simply held that, consistent with the principles of sovereign immunity barring suit against the United States absent an "unequivocally expressed" waiver, Rule 41(g) does not waive sovereign immunity with respect to actions for money damages and so equitable jurisdiction under Rule 41(g) does not permit courts to order the government to pay money damages. 355 F.3d 144, 150–51 (2d Cir.2004). The court in *Adeleke* then went on to address "at length various statutory bases under which a plaintiff might arguably recover damages for lost property." *Bokel v. NYPD Property Clerk Division*, No. 06 Civ. 2849, 2007 WL 526615, at *6 (E.D.N.Y. Feb. 13, 2007).

Therefore, consistent with the court's obligation to construe Adeyi's Rule 41(g) motion liberally, and especially in light of the potential Due Process violation, the court shall now address various bases under which Adeyi might state a claim for relief. First, the court addresses three potential avenues clearly barred by sovereign immunity under *Adeleke*. The court then turns to potential avenues not so clearly barred.

### Claims Barred by Sovereign Immunity

### Equitable Claim for Money Damages Under Rule 41(g)

In accordance with the holding in *Adeleke*, Adeyi is barred by sovereign immunity from asserting any claim for money damages under the court's equitable jurisdiction pursuant to Rule 41(g). *See Adeleke*, 355 F.3d at 151.

### Claim for Money Damages Under Administrative Procedure Act

In accordance with the holding in *Adeleke*, Adeyi is barred by sovereign immunity from asserting any claim for money damages under the Administrative Procedure Act. *See Adeleke*, 355 F.3d at 152 n. 7.

### Federal Tort Claims Act

As the government argues, sovereign immunity bars any claim for relief Adeyi might have under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (See Govt. Mem. 7–9.) The FTCA waives sovereign immunity for certain claims against the government "subject to numerous conditions, each of which must be satisfied for a court to exercise jurisdiction." *Adeleke*, 355 F.3d at 153.

Adeyi cannot recover under the FTCA because he has not filed an administrative claim with the appropriate federal agency before commencing the instant action. *See* 28 U.S.C. § 2675(a); *Adeleke*, 355 F.3d at 153. It is not clear on the present submissions whether Adeyi could still timely file an administrative claim.[4] *See* 28 U.S.C.

---

4. It appears from Adeyi's submissions that he learned of the destruction of his property on November 2, 2005, from a letter from Vivian Shevitz, Adeyi's appellate counsel. (See Dkt. No. 6, Letter from Adeyi to Shevitz dated Nov. 3, 2005.)

§ 2401(b) (claim must be presented "within two years after such claim accrues").

■ More fundamentally, however, the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs . . . or any other law enforcement officer." 28 U.S.C. § 2680(c). Although the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") creates an exception to § 2680(c)'s reinstatement of sovereign immunity, Adeyi cannot avail himself of that exception for the same reasons that prevented Adeleke: he cannot establish that he "was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law." 28 U.S.C. § 2680(c)(4). *See Adeleke*, 355 F.3d at 154 (citing 21 U.S.C. § 853(a) (subjecting to criminal forfeiture, *inter alia*, "property used . . . in any manner or part, to commit, or to facilitate the commission of," a narcotics felony)).

The court finds, therefore, that Adeyi is barred by sovereign immunity from pursuing a claim under the FTCA.

### Claims Not Necessarily Barred by Sovereign Immunity

*CAFRA Motion to Set Aside Forfeiture*

When an administrative forfeiture is effected after August 23, 2000, without notice to the property owner, "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute" is a motion filed under 18 U.S.C. § 983(e). *See* § 983(e)(5); *see also Alli–Balogun*, 281 F.3d at 369 n. 6 (noting that 18 U.S.C. § 983 applies to forfeitures commenced on or after 120 days from April 25, 2000).

The court therefore construes Adeyi's Rule 41(g) motion as making a § 983(e) motion to set aside forfeiture. *See Centeno v. United States*, No. 05 Civ. 8794, 2006 WL 2382529, at *3 (Aug. 17, 2006) (R & R construing Rule 41(g) motion as a § 983(e) motion in similar circumstances), *adopted by* 2006 WL 2771699 (S.D.N.Y. Sep.22, 2006).

Under CAFRA,

Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

(A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

(B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

18 U.S.C. § 983(e)(1).

■ As discussed above, the present submissions suggest that Adeyi stands a chance of succeeding on his § 983(e) motion.[5] However, because the parties did not address the application of § 983(e) to this case, the court will not rule on such a motion at this time.

The court hereby directs the government to show cause, within thirty days of the date of this order, by additional evidentiary submissions on the efforts it made to notify Adeyi as well as the actual date of forfeiture and by additional legal

---

**5.** If Adeyi prevails on his § 983(e) motion, "the court shall set aside the declaration of forfeiture as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party." § 983(e)(2)(A).

arguments, why the court should not set aside the forfeiture under § 983(e). The court directs Adeyi to respond to the government's submissions within forty-five days of the date of this order.

*Additional Relief if Forfeiture is Set Aside*

In addition, if the government did violate Adeyi's due process rights by effecting the forfeiture without adequate notice, Adeyi may be able to state a claim for relief under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, or *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Prior cases had suggested that the Tucker Act waived sovereign immunity for claims against the United States based on procedurally deficient forfeitures, with a *Bivens* action forming the substantive basis for the Tucker Act claim.[6] *See Boero v. Drug Enforcement Administration,* 111 F.3d 301, 305 n. 4 (2d Cir.1997); *Onwubiko v. United States,* 969 F.2d 1392, 1398–99 (2d Cir.1992).

The Second Circuit subsequently described this as "suspect" and "no longer good law" in light of *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 484–86, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), which held that a *Bivens* action may only be brought against federal *agents,* not federal *agencies. See Polanco v. U.S. Drug Enforcement Administration,* 158 F.3d 647, 651 (2d Cir.1998); *see also Mendez v. United States,* No. 99 Civ. 3496, 2005 WL 1208512, at *3 (S.D.N.Y. May 19, 2005) (rejecting Tucker Act claim against DEA).

These cases, however, do not foreclose the possibility of a Tucker Act claim against the United States resting on some other substantive basis or a *Bivens* action against the appropriate federal agent or agents. Nor does *Adeleke* necessarily preclude relief under the Tucker Act[7] or *Bivens*[8] in this case. Nor, for that matter, does CAFRA appear to preclude additional relief.[9]

The preceding discussion does not mean Adeyi will necessarily be able to state a

**6.** The Tucker Act confers jurisdiction in the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The Little Tucker Act confers concurrent jurisdiction upon district courts when the damage claim is $10,000 or less. *See* 28 U.S.C. § 1346(a)(2). These statutes, however, create no substantive rights for money damages enforceable against the United States. Rather, "the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell,* 463 U.S. 206, 216–217, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).

**7.** The *Adeleke* court held that sovereign immunity barred Adeleke's claim under the Tucker Act because he could not establish an entitlement obligating "the United States to insure

his seized property." 355 F.3d at 152. Adeyi, however, may be able to point to a substantive law mandating compensation from the government based on the government's failure to provide notice.

**8.** The *Adeleke* court did not address "the possibility of a *Bivens* action against any individual defendant" because there, unlike here, the plaintiff had conceded that the government had not caused the destruction of his property. 355 F.3d at 151 n. 6.

**9.** Although 18 U.S.C. § 983(e)(5) provides that "the *exclusive* remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute" shall be a motion filed under § 983(e), this does not seem intended to preclude other remedies seeking damages based on violations of other laws. *See* Civil Asset Forfeiture Reform Act, H.R. 105–358, 105th Cong., 1st Sess. (1997) ("The limitations in this section are applicable only to actions to set aside forfeiture decrees, and do not apply to actions against agencies for dam-

claim for relief under the Tucker Act or *Bivens* or some other law. Rather, on the present submissions, neither Adeyi nor the government has established that it is entitled to a judgment as a matter of law. The court therefore denies their motions at this time with leave to renew them.

## CONCLUSION

In sum, the court denies Adeyi's motion for summary judgment. The court grants in part and denies in part the government's motion to dismiss. The court grants the government's motion insofar as sovereign immunity bars Adeyi's claims for relief pursuant to the court's equitable jurisdiction under Rule 41(g), the Administrative Procedure Act, and the Federal Tort Claims Act. Furthermore, the court construes Adeyi's Rule 41(g) motion as an 18 U.S.C. § 983(e) motion to set aside forfeiture. Accordingly, the court directs the government to show cause, within thirty days of the date of this order, by additional evidentiary submissions on the efforts it made to notify Adeyi as well as the actual date of forfeiture and by additional legal arguments, why the court should not set aside the forfeiture under § 983(e). The court directs Adeyi to respond to the government's submissions within forty-five days of the date of this order.

SO ORDERED.

ages relating to the loss or destruction of seized property."). Rather, the exclusivity of § 983(e) seems intended to codify challenges previously made under Rule 41(g) and other provisions and to avoid problems that had created circuit splits. *See* Stefan D. Cassella, *Asset Forfeiture Law in the United States*, § 5–3 at 184–88 (2007) (§ 983(e) was intended "to resolve the uncertainty in the existing law and to provide a clear mechanism for resolving

challenges to administrative forfeitures"); Jimmy Gurulé, et al., *The Law of Asset Forfeiture* § 8–8 at 289 (2d ed.2004) (limits availability of Rule 41(g)); Stefan D. Cassella, "The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties," 27 *J. Legis.* 97, 107–08 nn. 66–67 (2001) (discussing circuit splits under prior law).