**Francisco L. AGUILAR,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 05–4365–cv.

United States Court of Appeals,
Second Circuit.

March 6, 2008.

Francisco Aguilar, Otisville, NY, pro se.

Henry K. Kopel, Assistant United States Attorney,(Kevin J. O'Connor, United States Attorney, William J. Nardini, Assis-

tant United States Attorney, of counsel), New Haven, CT, for Appellee.

PRESENT: Hon. ROSEMARY S. POOLER, Hon. ROBERT D. SACK and Hon. DEBRA A. LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Plaintiff–Appellant, Francisco Aguilar, appeals from the June 22, 2005, order of the United States District Court for the District of Connecticut (Burns, J.). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

In brief, Aguilar, who was convicted of narcotics trafficking and is serving a 40–year sentence, filed a posttrial Rule 41 motion in 1994 requesting the return of property that had been seized by the Government.[1] The district court ordered all non-contraband evidence returned to Aguilar's designated representative in 1995. While acknowledging the receipt of many items, Aguilar complained that other unspecified items were not returned; in 1997, the district court opened a civil action to enforce its 1995 order. See Rufu v. United States, 20 F.3d 63, 65 (2d Cir.1994) (per curiam) (noting that a post-conviction Rule 41 motion is properly converted into an equitable civil action). A stay was issued in 1997 pending the outcome of civil forfeiture proceedings stemming from Aguilar's narcotics conviction.

Aguilar moved to reopen the civil proceedings in December 2003, and requested the district judge's recusal in March 2004. The proceedings were reopened, but Aguilar's recusal request was denied. The Government searched for and found more than 30 items of Aguilar's property in 2004. Ten items he had requested were not found. In June 2004, the Government notified the district court that all noncontraband items in its possession had been returned, and the district court dismissed Aguilar's action, prompting his appeal. While the case was pending on appeal, the Government learned that the Drug Enforcement Agency had property records that had not been reviewed and that the Internal Revenue Service had also been involved in Aguilar's criminal case but had not been contacted regarding the return of any property it possessed. The Government requested remand to further supplement the district court record, and on remand it informed the district court that eight to ten items had been destroyed and that no further items were in its possession. The district court entered a judgment dismissing the case without awarding money damages.

Aguilar raises three issues on appeal. First, he argues that the district court judge should have recused herself because she presided over the civil forfeiture proceedings arising from his criminal conviction. This fact, however, is not a sufficient basis to warrant recusal. "[O]pinions held by judges as a result of what they learned in earlier proceedings" cannot be characterized as bias or prejudice. Liteky v. United States, 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). "It has long been regarded as normal and proper for a judge to . . . sit in successive trials involving the same defendant." Id.; see also United States v. Giordano, 442 F.3d 30, 48 (2d Cir.2006) (finding recusal unnecessary where judge who authorized a wiretap would also rule on the admissibility of evidence obtained from the

---

1. At the time of Aguilar's first motion, the relevant rule was Fed.R.Crim.P. 41(e). On December 1, 2002, this rule was redesignated Fed.R.Crim.P. 41(g) without substantive change. See De Almeida v. United States, 459 F.3d 377, 380 n. 2 (2d Cir.2006).

wiretap), *cert. denied,* —— U.S. ——, 127 S.Ct. 1253, 167 L.Ed.2d 88 (2007); *Omega Engineering, Inc. v. Omega, S.A.,* 432 F.3d 437, 447–48 (2d Cir.2005) ("Knowledge gained from the judge's discharge of his judicial function is not a ground for disqualification."). Therefore, we find that the district court did not abuse its discretion in denying Aguilar's recusal motion.

■ Aguilar also claims that the district court erred in dismissing his claim for the return of his property that had been seized. Prior to dismissing the case, the district court received a sworn affidavit from a Government official stating that "there are no remaining non-contraband items in the custody of the United States, that were either seized from or belonged to Francisco Aguilar." Significantly, this sworn statement came almost one year after Aguilar submitted a motion that listed particular property he was seeking. *See* Docket 3:97–cv–00767–EBB, Document 30. The district court also received an itemized list of all property returned to Aguilar, property seized as contraband, and property that had been lost or otherwise destroyed. After having reviewed "the complete record of the case," the district court dismissed Aguilar's claim, concluding that all non-contraband property in the possession of the Government had been returned. *See* Fed R.Crim. P. 41(g). Based on the foregoing, we find that the district court did not abuse its discretion.

■ Finally, Aguilar contends that the district court erred in refusing to award him money damages for his property that was lost or destroyed by the Government.

We are not persuaded by this argument. Sovereign immunity deprives the district court of subject matter jurisdiction over this claim. *See Adeleke v. United States,* 355 F.3d 144, 147 (2d Cir.2004). The equitable jurisdiction of the district court to return seized property "does not permit [it] to order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return." *Id.* at 151. Therefore, the district court properly declined to award money damages.[2]

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**

2. While we do not read Aguilar's papers so broadly as to allege a tort under the Federal Tort Claims Act, *cf. Bertin v. United States,* 478 F.3d 489, 491–92 (2d Cir.2007), even if we were to do so, we would lack jurisdiction to review such a claim. *See Ali v. Fed. Bureau of Prisons,* —— U.S. ——, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) (affirming the deci-

sion of the Eleventh Circuit to dismiss a similar claim for lack of jurisdiction under 28 U.S.C. § 2680(c)).

